## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| PAUL DAVID MAHAFFIE, ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | Case No. 04-2120-KHV |
| JOHN E. POTTER, et al., ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

Paul David Mahaffie filed suit *pro se* against his former employer, John E. Potter, Postmaster General of the United States, Ron McKay, Branch Manager, and Linda Ridley, his former supervisor. Plaintiff asserts a claim for retaliation under the Family And Medical Leave Act, 29 U. S. C. § 2611 *et seq.* ("FMLA"). This matter is before the Court on defendants' Motion For Summary Judgment (Doc. #54) filed March 10, 2006. For reasons set forth below, defendants' motion is sustained.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**Factual Background**

In responding to defendants' motion for summary judgment, plaintiff fails to comply with the local rule which governs the summary judgment process. D. Kan. Rule 56.1(b) states as follows:

> A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer

with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. . . . All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

In his response to defendants' statement of facts, plaintiff does not cite any record support. His approach is insufficient to raise a genuine issue of material fact under D. Kan. Rule 56.1. See Wisner v. Unisys Corp., 917 F. Supp. 1501, 1504 (D. Kan. 1996) (response which set forth 17 independent statements of fact, and made blanket denial of movant's statements of fact "insofar as they are inconsistent" with plaintiff's factual statements, did not conform to letter or spirit of Rule 56.1).

The Court is aware that plaintiff proceeds *pro se* and that *pro se* litigants should not succumb to summary judgment merely because they fail to comply with technical requirements in defending such a motion. See Woods v. Roberts, 1995 WL 65457, 47 F.3d 1178 (10th Cir. 1995); Hass v. United States Air Force, 848 F. Supp. 926, 929 (D. Kan. 1994). The Court has therefore diligently searched plaintiff's brief and defendants' exhibits to identify any genuine issues of material fact. Because plaintiff has provided no record support for any of his responses to defendants' statements of fact, however, the Court must deem all of defendants' facts to be admitted for purposes of the motion. The undisputed facts are these:

Mahaffie worked as a custodian at the Olathe East Post Office from May 30, 1996, until he resigned on April 4, 2003. Linda Ridley was Mahaffie's immediate supervisor from late September or early October of 2002, through April 4, 2003. Ron McKay has been Customer Service Manager at the Olathe East Post Office from June or July of 2002 through the present. John E. Potter is the Postmaster General of the United States.

### USPS Policies

The United States Postal Service ("USPS") has a progressive discipline policy which provides for corrective measures beginning with job instructions and then official job discussions. If the discussions do not correct the behavior, the USPS gives the employee a letter of warning, a seven-day suspension, a 14-day suspension and finally removal. The level of discipline is based upon the nature and severity of the employee's acts or failure to act.

The USPS Employee and Labor Relations Manual requires that employees maintain regular attendance. McKay developed additional, unwritten general attendance guidelines for the Olathe East Post Office. They provided that the supervisor would notify employees of potential attendance problems when they received three unscheduled absences in 90 days and five unscheduled absences within a year.

USPS policy requires that employees who intend to invoke FMLA rights must give their supervisors FMLA paperwork within 15 days of the first absence day after they receive notice of their FMLA rights.

### Mahaffie's Job Performance

When Ridley went to the Olathe East Post Office in late September of 2002, employees complained to her that the bathrooms were not clean and that trash cans were not being emptied. At that time, Mahaffie was the full-time regular custodian and Dale Long was the part-time custodian. In November of 2002, Ridley created a schedule for Mahaffie and Long to meet the needs of the business and the work schedules of all employees. Mahaffie was very upset when Ridley gave him a schedule because he felt that he did not need supervision.[1] Mahaffie was responsible for most inside duties,

---

[1] On several occasions, Ridley saw Mahaffie smoking on the dock instead of working at his designated area. When Ridley discussed this with him, he told her that previous management had told him that he did not need supervision. On November 18, 2002, Ridley saw Mahaffie
(continued...)

including cleaning the lobby and bathrooms, sweeping the floor and cleaning the clerk, box and carrier areas. Mahaffie had trouble sticking with the schedule and hid from supervisors to avoid working. Mahaffie believed that Ridley was harassing him because he believed that every time he turned around, she was there. McKay told Mahaffie that supervisors are required to spot check to make sure their employees are performing their job duties.

Sherry Moll worked as a Mail Clerk at the Olathe East Post Office and also served as union steward. As steward, Moll brought employee grievances to the attention of management. Mahaffie filed many grievances against Ridley because he claimed that she harassed him. Moll told him, "It's not harassment when a supervisor tells you what to do." Moll believed that Mahaffie filed grievances against Ridley because he did not want her to tell him what to do.[2]

## Mahaffie' Leave Record

On December 20, 2002, McKay gave Mahaffie a packet of FMLA forms and told him that if he believed that the sick leave which he had taken from December 16 through 20, 2002 was related to an FMLA condition, he needed to provide completed FMLA paperwork within 15 days from the first absence day.

---

[1](...continued)
smoking a cigarette while emptying trash into a dumpster. Ridley told him not to smoke while he was emptying the trash.

[2] Before McKay and Ridley began working at the Olathe East Post Office, Moll consistently saw Mahaffie on the dock with a can of pop, smoking and talking to people. When McKay and Ridley went to the Olathe East Post Office, they tried to make Mahaffie's day more structured. In Moll's work area, the Distribution Area, she had supervisors following her around all of the time. When Moll talked to Mahaffie, however, he did not believe that anyone should be able to question his whereabouts. Moll personally saw Mahaffie leave the Olathe East Post Office while he was on the clock, in violation of USPS rules.

On an FMLA certification document dated January 2, 2003, Mahaffie's health care provider stated that he saw Mahaffie for anxiety on December 17, 2002, and that Mahaffie was incapacitated until December 30, 2003. The health care provider also stated that Mahaffie's anxiety caused him to have heart palpitations and feel bad, and that he would miss work intermittently due to his anxiety, with a probable duration of "2-5 days with 1-3 episodes per year." Based upon this certification, Ridley approved FMLA-related leave for Mahaffie for the following dates: December 16 through 20, 2002; December 23 through 27, 2002; January 13 through 17, 2003; and February 13, 2003.

On February 24, 2003, Ridley reviewed a second FMLA certification dated February 20, 2003. She determined that it was not properly completed because it did not contain Mahaffie's name or state the frequency of his episodes. Ridley notified Mahaffie of the deficiencies and gave him an opportunity to correct the certification.

On March 4, 2003, Ridley called Mahaffie to let him know that he had gone beyond the three episodes per year set out in the FMLA certification dated January 2, 2003. Some time after that call, Mahaffie provided a revised certification dated February 20, 2003. The revised certification stated that his condition commenced on January 12, 2003 and that the number of episodes was "unknown." Based on the revised FMLA, Ridley approved FMLA-related leave for March 4 through 7 and March 11 through 14, 2003.

On March 6, 2003, Mahaffie requested eight hours of leave on March 10, 2003. In support of this request, Mahaffie gave Ridley a doctor's note which stated, "Excuse him from work 3/10/03 - Needs to transport son to and from EGD - son will be put to sleep for test." Ridley did not approve Mahaffie's request for FMLA leave because he did not submit documentation for FMLA leave for dependent care.

6

On February 12, 2003, the USPS gave Mahaffie a notice of 14-day suspension based on the following unscheduled absences: August 13 through 15, 2002 (22.5 hours), September 16 and 17, 2002 (13.02 hours), December 12, 2002 (5.63 hours) and January 22 and 23, 2003 (12.93 hours). None of the unscheduled absences involved FMLA leave. Mahaffie grieved the 14-day suspension and resigned before it was resolved.

Plaintiff alleges that in retaliation for his exercise of FMLA rights, defendants (1) closely monitored his work, (2) changed his duties,[3] (3) placed him on a work schedule, (4) changed his break time from 8:00 a.m. to 8:30 a.m., (5) suspended him for 14 days, (6) denied him FMLA leave to take his son for a medical test which required general anesthesia and (7) constructively discharged him.

McKay and Ridley deny that they retaliated against Mahaffie for invoking FMLA rights. Ridley denied Mahaffie's FMLA leave requests only when he did not provide medical documentation within 15 days or when the leave did not meet the criteria specified by either the FMLA or the doctor. In instances when the leave request did not meet the doctor's criteria, Ridley gave Mahaffie an opportunity to update and correct it.

During the time that Ridley supervised Mahaffie, his status as a custodian never changed. The USPS paid him for all approved FMLA leave, annual leave and sick leave whether he took it as scheduled leave or unscheduled leave. During the time Ridley supervised Mahaffie, the USPS did not reduce his pay or benefits.

On April 4, 2003, Mahaffie resigned from the USPS, telling McKay that he no longer wanted to

---

[3] Specifically, Mahaffie complains that Ridley adversely affected his employment when she told him to take tape off of a table and a window, told him to clean up a coffee spill and told him that Long, rather than Mahaffie, would change light bulbs.

7

work at the USPS. He said that his resignation had nothing to do with McKay or anyone else. Mahaffie shook McKay's hand and left. Based upon their discussion, McKay thought Mahaffie had left on good terms.

In April of 2003, Ridley talked to Mahaffie about his decision to resign. Ridley knew that Mahaffie's retirement was only a few years away and she asked him to think about staying at the Postal Service until his retirement date. Mahaffie insisted that he was resigning for personal reasons which had nothing to do with Ridley or his employment. Mahaffie further explained that he had been blaming Ridley for all of his problems, but that through counseling he had realized that she was not the problem.

When Mahaffie discussed his resignation with Moll, he told her that he did not want to work anymore. He told her that he had personal problems, and that his resignation had nothing to do with Ridley or McKay.

## **Analysis**

Defendants assert that they are entitled to summary judgment because (1) plaintiff has not set forth any adverse employment actions, including constructive discharge; (2) in the alternative, plaintiff cannot establish a causal connection between his protected activity and the adverse employment actions; and (3) in the alternative, defendants have set forth legitimate, non-discriminatory reasons for each adverse employment action and plaintiff has not cited evidence that their reasons are a pretext for retaliation.

To establish a prima facie case of FMLA retaliation, Mahaffie must show (1) that he availed himself of a protected right under the FMLA; (2) that defendants took adverse employment action against him; and (3) a causal connection between these two actions. Chavez v. Thomas & Betts Corp., 396 F.3d 1088, 1104 (10th Cir. 2005). Under the FMLA, an adverse employment action occurs when

employers use the taking of FMLA leave as a negative factor in employment actions such as hiring, promotions or disciplinary actions. Not every unpopular employment action which occurs subsequent to FMLA leave is an adverse employment action under the FMLA. An "adverse employment action" means an ultimate employment decision involving hiring, firing, compensation, benefits or the failure to promote or grant leave. Family and Medical Leave Act of 1993 § 105(a)(2); Krauss v. Catholic Health Initiatives Mtn. Region, 66 P.3d 195 (Colo. Ct. App. 2003). Although the Tenth Circuit liberally defines adverse employment actions, actions that are merely inconvenient do not constitute adverse actions. Williams v. Potter, 331 F. Supp.2d 1331, 1345 (D. Kan. 2004). Also, transferring an employee to the night shift is not an adverse employment action where duties, pay and benefits remain the same. Benningfield v. City of Houston, 157 F.3d 369, 377 (5th Cir. 1998). Furthermore, a difference in work hours alone is not an adverse employment action. Craven v. Tex. Dep't of Crim. Justice, 151 F. Supp.2d 757, 765-66 (N.D. Tex. 2001).

If plaintiff establishes adverse employment action, he must prove a causal connection between the adverse employment action and his invocation of his rights under the FMLA. Plaintiff may establish a causal connection with evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct followed closely by adverse action. Morgan v. Hilti, 108 F.3d 1319, 1325 (1997) (plaintiff must show adverse employment action motivated by impermissible retaliatory or discriminatory animus).

Defendants point out that plaintiff did not engage in protected FMLA activity until December 20, 2002, when they first learned of his possible FMLA leave and informed him of FMLA rights. Defendants correctly conclude that no adverse employment action which occurred before December 20, 2002 could have been retaliatory. According to plaintiff, the adverse employment actions include

9

implementing a new schedule in November of 2002, adjusting his duties and changing his break time. Plaintiff does not deny that defendants first learned of his possible invocation of FMLA rights on December 20, 2002. Defendants are entitled to summary judgment as to alleged adverse actions before that date.

Plaintiff claims that after he invoked FMLA rights in December of 2002, Ridley took adverse employment actions when she (1) closely supervised his work, (2) gave him a notice of 14-day suspension on February 12, 2003 and (3) denied him FMLA leave to take his son to the doctor. Mahaffie also claims that defendants constructively discharged him. Specifically, he contends that "[d]efendants were trying to retaliate[] against him by setting out to fire him while he was covered under FMLA for anxiety disorder, Plaintiff had this anxiety disorder at the time he signed a document resigning from the Postal Service." The Court addresses these actions in turn.

### 1. Close Supervision

Plaintiff asserts that Ridley adversely affected his employment when she closely supervised his work. Defendants assert that as a matter of law, close supervision is not an adverse employment action. The Court cannot say that extreme supervision could never constitute adverse employment action. Cf. Johnson v. United Parcel Serv., Inc., 117 Fed. Appx. 444, 450-51 (6th Cir. 2004) (allegation that supervisors took more monitored runs with black employees not adverse employment action). In this case, however, plaintiff has provided no evidence of supervision which might rise to adverse employment action. The record reveals that in response to interrogatories, plaintiff stated that Ridley followed him around and treated him "like a 7-year-old." Defendants' Memorandum And Order In Support of Summary Judgment (Doc. #55), Ex. F. at 6. This conclusory statement, without more, does not establish adverse employment action. Plaintiff has not set forth a prima facie case of retaliation based

10

on close supervision.

2. Notice of 14-Day Suspension On February 12, 2003

Plaintiff next asserts that Ridley adversely affected his employment on February 12, 2003, when she issued him a notice of 14-day suspension for unauthorized absences. Defendants counter that the notice does not rise to the level of adverse employment action because Mahaffie admitted that he never served the suspension. Defendant therefore asserts that the suspension could not have significantly changed plaintiff's employment status. The Court has found no case law directly on point. Cf. Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997) (evidence that employer "papered" plaintiff's file with negative reports constitutes adverse employment actions, even if plaintiff was not discharged, demoted or suspended); Berry v. Stevinson Chevrolet, 74 F.3d 980, 986 (10th Cir. 1996) (employer actions that can have adverse impact on future employment opportunities are adverse employment actions). Assuming that an un-served suspension is an adverse employment action, defendants assert that plaintiff has not set forth a casual connection between the suspension notice and protected activity. Viewed in a light most favorable to plaintiff, however, he has established a causal connection between his protected activity – defendant's knowledge of his possible FMLA claim on December 20, 2002 – and the notice of suspension on February 12, 2002. See Mondaine v. Am. Drug Stores, Inc., 408 F. Supp.2d 1169 (D. Kan. 2006) (six week time span between protected activity and adverse employment actions enough to establish prima facie case of casual connection). Arguably, Mahaffie has set forth a prima facie case of retaliation as to the 14-day suspension.

Defendants assert that they have articulated a legitimate, non-discriminatory reason for the suspension. They point to evidence that Ridley recommended discipline for Mahaffie based upon a series of non-FMLA unscheduled absences. In the Disciplinary Action Proposal, Ridley gave the

11

following reasons for the discipline:

> Mr. Dave Mahaffie went home after working only 2.07 hours on 1/22/03. He then called in sick on 1/23/03. Mr. Mahaffie was issued a 7-day working suspension on 5/13/02 for attendance irregularities. Since this suspension, he has had three incidents of unscheduled absences involving 4 whole days and three partial days. This therefore, warrants the next step of corrective action which is a 14-day suspension.

Ridley's explanation provides a legitimate non-discriminatory reason. Because defendants have met their burden of offering a non-discriminatory reason, the presumption of discrimination drops from the case and plaintiff must demonstrate a genuine issue of material fact whether "the proffered reason was not the true reason for the employment decision."

A plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan, 108 F.3d at 1323 (quotations omitted). While this burden is not onerous, it is also not empty or perfunctory. Id. at 1323-24. A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, i.e. unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000). Plaintiff cites no evidence that defendants' stated reason for the 14-day suspension is a pretext for retaliation, and defendants therefore are entitled to summary judgment on that claim.

      3.      Denial of FMLA Leave For Son's Medical Procedure

12

Plaintiff asserts that Ridley's denial of his request for eight hours of leave on March 10, 2003, to transport his son to a medical procedure, was adverse employment action. Ridley denied the request because plaintiff did not provide FMLA paperwork for this absence. Defendants assert that denial of the leave request was not adverse employment action, but cite no case law for this proposition. The Court assumes, without deciding, that plaintiff has set forth a prima facie case of retaliation based on denial of FMLA leave, and proceeds to the pretext analysis.

Defendants assert that they had a legitimate, nondiscriminatory reason to deny plaintiff's request for leave to accompany his son to a medical procedure. Specifically, defendants cite Ridley's testimony that she did not approve the request because plaintiff did not provide FMLA paperwork within 15 days as required. Ridley testified that she always gave plaintiff a chance to correct paperwork, and allowed FMLA leave if plaintiff did so. The evidence shows that Ridley followed past practice when she denied plaintiff's FMLA request when he failed to provide the required paperwork. Defendants have thus met their burden to set forth a legitimate, nondiscriminatory reason. In response, plaintiff does not point to any evidence that defendants' stated reason for denial of FMLA leave is a pretext for retaliation. Plaintiff's evidence does not tend to show that defendants' stated reason is false or that a retaliatory reason more likely motivated it. Cf. Kendrick, 220 F.3d at 1230 (pretext may be established if defendant acted contrary to company practice). Defendants therefore are entitled to summary judgment on this claim.

### 4. Constructive Discharge

Plaintiff also appears to assert that defendants constructively discharged him. Defendants contend that as a matter of law, plaintiff cannot show constructive discharge. An employee who is not

13

formally discharged may be constructively discharged if the employer, by its illegal discriminatory acts, has made working conditions so difficult that a reasonable person in plaintiff's position would feel compelled to resign. Essentially, plaintiff must show that he had "no other choice but to quit." Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997); Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992). The conditions of employment must be objectively intolerable; plaintiff's subjective views of the situation are irrelevant. Sanchez v. Denver Pub. Sch., 164 F.3d 527, 534 (10th Cir. 1998).

In his constructive discharge claim, plaintiff alleges that "[d]efendants were trying to retaliate[] against him by setting out to fire him while he was covered under FMLA for anxiety disorder, Plaintiff had this anxiety disorder at the time he signed a document resigning from the Postal Service." Pretrial Order §5(a). Defendants point out that Mahaffie stated that he voluntarily resigned for "ill health and personal reasons." In response, plaintiff cites no evidence that defendants constructively discharged him. As noted above, in response to interrogatories, plaintiff stated that Ridley followed him around and treated him "like a 7-year-old." Defendants' Memorandum And Order In Support of Summary Judgment (Doc. #55), Ex. F. at 6. Without more details, however, this statement does not establish intolerable conditions of employment. See Turnwall v. Trust Co. of Am., 146 Fed. Appx. 983 at *3-4 (10th Cir. 2005) ("micro management" for three weeks not grounds for constructive discharge; plaintiff's "weakened emotional condition" irrelevant to objective test). Further, where a plaintiff voluntarily resigns and the employee's concerns arise from a strained relationship with a supervisor, there is no adverse employment decision against the plaintiff. McKenzie v. Sprint/United Mgmt. Corp., No. 03-2348-GTV, 2004 WL 2634444 at *8-9 (D. Kan. Nov. 16, 2004). Defendants are therefore entitled to

14

summary judgment on plaintiff's constructive discharge claim.

**IT IS THEREFORE ORDERED** that Defendants' <u>Motion For Summary Judgment</u> (Doc. #54) filed March 10, 2006 be and hereby is **SUSTAINED**. The Clerk is directed to enter judgment for defendants.

Dated this 9th day of June, 2006 at Kansas City, Kansas.

<u>s/Kathryn H. Vratil</u>
KATHRYN H. VRATIL
UNITED STATES DISTRICT JUDGE